**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**PASCAL T.,**

                                    **Plaintiff,**

        vs.                                                     **5:17-CV-01347**
                                                                **(MAD)**

**NANCY A. BERRYHILL,**
_Acting Commissioner of Social Security_,

                                    **Defendant.**

_____

**APPEARANCES:**                        **OF COUNSEL:**

**CONBOY, MCKAY, BACHMAN &**            **SCOTT B. GOLDIE, ESQ.**
**KENDALL, LLP**
2 Judson Street
Canton, New York 13617
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**      **MARIA FRAGASSI  SANTANGELO,**
Office of General Counsel               **ESQ.**
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        On June 30, 2016, Plaintiff filed an application for Social Security Disability Insurance

Benefits ("DIB").  _See_ Administrative Transcript ("Tr.") at 173-76.[1]  On September 26, 2016,

Plaintiff's claim was initially denied.  Plaintiff made a timely request for a hearing before

---

[1] Defendant Commissioner also submitted a supplemental filing containing a document
that was inadvertently omitted from the record.  _See_ Dkt. No. 10.  Because the pagination in this
supplemental record continues immediately after the last page of the original record, all citations
to the supplemental record will also be in the "Tr." format.

Administrative Law Judge ("ALJ"), who issued an unfavorable decision on June 19, 2017. *See id.* at 28-45, 88-93. Plaintiff made a request to review the unfavorable decision, and on October 18, 2017, the Appeals Council affirmed the ALJ's decision. *See id.* at 1-5, 14-25.

Plaintiff commenced this action under 42 U.S.C. § 405(g) seeking review of the Commissioner's unfavorable decision. Currently before the Court are the parties' cross-motions for judgment on the pleadings.

## II. BACKGROUND

### A. Medical History

On the application date of June 30, 2016, Plaintiff was thirty-three years old. *See* Tr. at 173. Plaintiff reported a tenth grade education, with completed GED and some college course work, as well as past employment as a woodworker/machinist, U.S. Army infantryman, and U.S. Army helicopter mechanic/crew member. *See id.* at 56-57, 212.

On December 28, 2015, Plaintiff was treated for Post-Traumatic Stress Disorder ("PTSD") and Traumatic Brain Injury ("TBI") at the AHC Guthrie Behavioral Health Facility at Fort Drum, New York. *See id.* at 371-1411, 1428-2669. Plaintiff was seen and treated weekly there until he medically retired in November 2016. *See id.* at 371-1411, 1428-2669. Plaintiff underwent counseling, physical therapy, and occupational therapy, and during this treatment doctors noted marked psychotic features, social withdrawal, alienation, and anger control issues. *See id.* at 586. Plaintiff was evaluated and treated by Dr. Leon Zacharowicz, who noted that Plaintiff had attention and concentration deficits, and had lost control of his temper on a few occasions. *See id.* at 1641-61. Plaintiff also underwent psychological evaluation conducted by Almira Sulejmanovic, LCSW-R, who diagnosed Plaintiff with PTSD, a history of TBI, and adjustment disorder with mixed emotional features. *See id.* at 1357. Plaintiff was prescribed physical and

occupational therapy at the Behavioral Health Clinic, and his therapist noted that he was sitting sideways in his chair and often shifting to mitigate pain. *See id.* at 1428-1733, 1472.

In June 2016, Plaintiff commenced treatment at the Veteran's Administration for PTSD, TBI, migraines, back and neck pain, and bilateral foot pain. *See id.* at 283-370. An assessment by Dr. Rachel Meirose found cervical strain, neck numbness and pain, with impaired cervical rotation and bilateral trapezious strain. *See id.* Plaintiff was treated at the VA for a left knee injury, a right shoulder injury, bilateral foot pain, and low back pain, and was found to be suffering from migraines, dizziness, pounding headaches, and sensitivity to light and sound occasionally associated with vomiting. *See id.*

Beginning November 15, 2016, Plaintiff sought treatment at the Watertown Vet Center, where he attended fourteen sessions for PTSD treatment. *See id.* at 2674-2817. Jennifer Christie, MS, NCC, LMHC, created a Medical Source Statement of Ability to do Work-Related Activities (Mental) on April 11, 2017, which found that Plaintiff had moderate restrictions in 8 out of 11 categories, and mild restrictions in the rest. *See id.* at 2801-04. Plaintiff also completed a Residual Functional Capacity Assessment that found numerous physical limitations, including limiting Plaintiff to only occasionally lifting up to ten pounds; only sitting, standing, or walking up to one hour in an eight-hour workday; a limited ability to push, pull, or handle; and environmental and postural limitations. *See id.* at 2806-12.

On September 6, 2016, Plaintiff underwent an Independent Medical Examination conducted by Dr. Elke Lorensen at the request of the New York State Division of Disability Determinations. *See id.* at 1418-21. Dr. Lorensen noted hearing loss, left knee pain, left hip pain, bilateral ankle pain, back pain, neck pain, tinnitus, and chronic low back pain, as well as his daily living activities, including cooking, cleaning and doing laundry 3-4 times a week, caring for

his daily hygiene, and an inability to go shopping. *See id.* Dr. Lorensen concluded that Plaintiff has no gross limitations regarding sitting, standing, walking, and handling small objects, but had moderate limitations for bending, lifting, reaching, kneeling, and squatting. *See id.*

Also on September 6, 2016, Plaintiff underwent an Independent Psychiatric Evaluation conducted by Richard Oman, ED.D., where Plaintiff reported a variety of mental difficulties, including dysphoric mood, a loss of interest, irritability and feelings of worthlessness, nightmares, difficulty concentrating, headaches, flashbacks, panic attacks, and visual hallucinations. *See id.* at 1422-27. Dr. Oman made the following conclusions: Plaintiff can follow and understand simple directions, and can perform simple tasks independently with no evidence of limitations; he can maintain attention, concentration, a regular schedule, and make appropriate decisions with mild limitations; he can learn new tasks and relate adequately with others with mild to moderate limitation; and he can perform complex tasks independently and appropriately deal with stress with moderate limitations. *See id.* The doctor concluded that while the result are consistent with some psychiatric problems, they did not by themselves interfere with the Plaintiff's ability to function on a daily basis. *See id.*

On June 6, 2017, Plaintiff appeared before the ALJ and testified in a hearing concerning the September 26, 2016, denial of disability insurance benefits. *See id.* at 47-72. On June 7, 2016, Plaintiff was evaluated by Dr. Sarkis Anac to determine his ability to remain in his then-current Army position. *See id.* at 2818-2824. Dr. Anac found that Plaintiff was disqualified under the Army's retention standards, due to his chronic pain and osteoarthritis in his left knee and PTSD. *See id.*

On August 4, 2017, several months <u>after</u> the hearing with the ALJ concerning Plaintiff's DIB denial, the Department of Veteran's Affairs rendered a decision finding that Plaintiff was

100% disabled due to PTSD, effective November 16, 2016. *See id.* at 12. Plaintiff's clinical psychologist at the VA also completed a Review Post Traumatic Stress Disorder Disability Benefits Questionnaire ("PTSD Questionnaire") on the same day. *See id.* at 2832-36. After reviewing Plaintiff's medical records and what Plaintiff self reported, the report concluded that there was a significant increase in the overall severity of Plaintiff's PTSD symptoms since the last examination in November 2016, going from moderate to severe. *See id.* at 2836. The report found Plaintiff to be "totally disabled . . . in terms of his occupational functioning," which "would preclude any capacity on his part whatsoever for maintaining even a marginal semblance of behavioral or emotional stability and any type of work setting, even a lo[w] stress one." *See id.*

**B.    The ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2016, the alleged onset date. *See* Tr. at 33. At step two, the ALJ found that Plaintiff had the following severe impairments: history of TBI, degenerative joint disease of the left knee, depressive disorder, PTSD, and anxiety/panic disorder. *See id.* at 34. At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* The ALJ specifically considered the criteria of listings 1.02 (major dysfunction of a joint [due to any cause]), 11.18 (TBI), 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders, 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). *See id.*

The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), in that Plaintiff retained the ability

to understand and follow simple instructions and directions; perform simple tasks with supervision or independently; and maintain attention and concentration for simple tasks. *See id.* at 36. The ALJ also found that Plaintiff could regularly attend to a routine and maintain a schedule; relate to and interact with others to the extent necessary to carry out simple tasks; handle reasonable levels of simple work related stress, and can make decisions directly related to the performance of simple work and handle the usual work place changes and interaction associated with simple work. *See id.* at 36-37.

At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work. *See id.* at 39. Proceeding to step five, and after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform. *See id.* at 40. Specifically, after taking into account Plaintiff's additional mental limitations, the ALJ found that Plaintiff's limitations did not preclude him from performing all the basic physical and mental requirements of sedentary, unskilled work on a sustained basis. *See id.* Based on these findings, the ALJ determined that Plaintiff was not disabled. *See id.* at 41.

On October 18, 2017, the Appeals Council denied Plaintiff's request for review. *See* Tr. at 1-6. In its decision, the Appeals Council acknowledged that, with his appeal, Plaintiff submitted "medical records from Syracuse VAMC dated August 4, 2017 (5 pages) and Department of Veteran's Affairs dated August 4, 2017 through September 21, 2017 (6 pages)." *Id.* at 2. The Appeals Council found that, because the ALJ decided the case through June 19, 2017, the additional evidence did not relate to the period at issue. *See id.* As such, it determined that the additional evidence "does not affect the decision about whether you were disabled beginning on or before June 19, 2017." *Id.*

**C.    Plaintiff's Motion**

In his motion, Plaintiff argues that the Commissioner's decision is not supported by substantial evidence for the following reasons: (1) the Appeals Council improperly and arbitrarily failed to include additional medical opinion evidence in the record when they rejected the August 4, 2017, PTSD Questionnaire for not relating to the period of disability, and did not include it in the Administrative Record; (2) the ALJ erred when he did not find that Plaintiff met the Listing under 12.15 for trauma and stressor related disorders; (3) the ALJ failed to properly assess the severity of Plaintiff's migraine headaches which should have been considered a severe impairment; (4) the ALJ's credibility determination was unsupported by substantial evidence because it disregards certain supporting evidence in the record and the analysis was incommensurate with the requirements established by code, regulation, and case law; and (5) the ALJ failed to properly assess Plaintiff's RFC when he failed to give consideration to Plaintiff's migraine headaches as a severe impairment and because he incorrectly concluded that Plaintiff can "relate and interact with others to the extent necessary to carry out simple tasks . . . and handle reasonable levels of simple work-related stress." *See* Dkt. No. 7 at 14-26.  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, the Commissioner's cross motion is granted and this action is dismissed.

## III. DISCUSSION

**A.    Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  There is a five-step analysis for evaluating

disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.**    **Additional Medical Evidence Submitted to Appeals Council**

Plaintiff contends that the Appeals Council improperly and arbitrarily failed to include additional medical opinion evidence in the record when they rejected the August 4, 2017, PTSD Questionnaire for not relating to the period of disability. *See* Dkt. No. 7 at 15-17. This document was prepared on August 4, 2017, and contained an assessment of Plaintiff's condition, measured against criteria from the Diagnostic and Statistical Manual of Mental Disorders. *See id.*

In addition to the requirement of a showing of good cause, the Appeals Council will review new evidence submitted as part of the record if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996); *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991). Where the Appeals Council denies review of the ALJ's decision after considering new evidence, the District Court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 46.

As a threshold matter, Plaintiff raises the fact that the Appeals Council failed to include the PTSD Questionnaire in the administrative record, alleging that this prevents the Court from determining if it was properly excluded from consideration by the Appeals Council when they

denied review of the ALJ's decision. The Second Circuit has held that "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez*, 77 F.3d at 45. The Commissioner does not contest that the Appeals Council should have included the PTSD Questionnaire in the record, or that it did not. *See* Tr. at 5; Dkt. No. 11 at 7 n.4. However, the Commissioner asserts that this oversight was cured by the filing of a supplemental record containing the PTSD Questionnaire as part of her answer. *See* Dkt. No. 10. As the supplemental record has placed the PTSD Questionnaire properly before the Court for review, this Court is able to properly consider the actions of the Appeals Council and Plaintiff has suffered no prejudice due to its initial absence.

Upon review, the Court finds that the Appeals Council's decision regarding the PTSD Questionnaire is supported by substantial evidence. The ALJ's decision, dated June 19, 2017, considered evidence in the record through April 21, 2017. *See* Tr. at 31-45, 2806-16. The PTSD Questionnaire submitted to the Appeals Council in connection with Plaintiff's request for review was completed by Dr. Michael Thompson on August 4, 2017, weeks after the hearing decision. *See id.* at 2832-36. Dr. Thompson's assessment was based on records prior to August 4, 2017, including an April 2017 report indicating a diagnosis of mild TBI. *See id.* at 2832-33.

Significantly, as the Commissioner correctly notes, Dr. Thompson's report reflected a current assessment of Plaintiff's condition as of August 2017, without relating to his functionality or symptomatology back to the relevant period on or before the ALJ's June 19, 2017 decision. For example, Dr. Thompson remarked that, "**[w]hen compared** to when this veteran was last examined for compensation and pension purposes in November 2016 **there is evidence of a significant increase in the overall severity of his PTSD symptoms**. When last examined they

were moderate.  They **are now** severe." *Id.* at 2836 (emphasis added).  Additionally, Dr.

Thompson concluded as follows:

> Based on all the evidence available it is my opinion the veteran **presents** as totally disabled **at this time** in terms of his occupational functioning secondary to the disruptive effective of his PTSD symptoms.  The chronicity and **current marked severity** of his symptoms would preclude any capacity on his part whatsoever for maintaining even a marginal semblance of behavioral or emotional stability [in] any type of work setting, even a lo[w] stress one.

*Id.* (emphasis added).

Based on the clear language used by Dr. Thompson in the PTSD Questionnaire, his

opinions did not relate to the time period at issue in the present matter.  As such, the Appeals

Council properly declined to review the ALJ's decision based on this new evidence because it

could not have had any impact on the determination of whether Plaintiff was disabled on or

before the ALJ's June 19, 2017 decision.

Based on the foregoing, the Court finds that the PTSD Questionnaire did not constitute

new and material evidence warranting remand under 20 C.F.R. § 404.970(c).

**C.       Listing 12.15 for Trauma and Stressor Related Disorders**

Plaintiff asserts that the evidence, mainly the contents of the PTSD Questionnaire that the

Appeals Council refused to consider, required a finding that Plaintiff met the requirements under

Listing 12.15 for trauma and stressor related disorders.  *See* 20 C.F.R. 404, Subpt. P, Appx. 1, §

12.00A2, 12.15.  The Commissioner argues that, even if the Court were to consider the PTSD

Questionnaire, the evidence does not support a finding that Plaintiff's PTSD met the requirements

of Listing 12.15.  *See* Dkt. No. 11 at 9-15.

A plaintiff will be found disabled if the individual has an impairment, or combination of

impairments, that meets or equals one of the Listings and meets the duration requirement. 20

C.F.R. § 416.920(d). The burden is on the plaintiff to present medical findings that his or her impairment meets or equals a Listing. *See Davis v. Astrue*, No. 09-CV-0186, 2010 WL 2545961, *3 (N.D.N.Y. June 3, 2010). A plaintiff must show that his or her impairment meets or equals all of the specified medical criteria of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (superceded by statute on other grounds). If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id.*

The Listing for trauma and stressor related disorders requires a claimant to satisfy the requirements of paragraphs A and B, or A and C. Paragraph A requires the plaintiff to provide medical documentation of the following: (1) exposure to actual or threatened death, serious injury, or violence; (2) subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks); (3) avoidance of external reminders of the event; (4) disturbance in mood and behavior; and (5) increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).[2] To satisfy paragraph B, the plaintiff must demonstrate extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.15.

In his decision, the ALJ found that Plaintiff had the following levels of limitations with regards to the criterion: "<u>moderate</u> difficulties in understanding, remembering, or applying information; <u>moderate</u> difficulties in interacting with others; <u>moderate</u> difficulties in concentrating, persisting, or maintaining pace; and <u>mild</u> difficulties in adapting or managing

---

[2] The Commissioner concedes that Plaintiff meets the criteria under paragraph A. *See* Dkt. No. 11 at 11.

oneself." *See* Tr. at 35 (emphasis in original). In making this determination, the ALJ noted that despite Plaintiff's self reported problems paying attention, concentrating, completing tasks, following written instruction, being around and getting along with others, remembering things, and handling stress and change, he had also reported that he is able to bathe, dress, and groom himself; prepare meals, perform household chores, and attend appointments; garden and mow the lawn; pay bills, count change, and handle a savings account; and socialize with his family and in group therapy. *See id.* The ALJ also noted Dr. Oman's exam of Plaintiff, which found him to be "irritable and mildly suspicious" with marginal social skills, but also demonstrated adequate expressive and receptive language skills as well as coherent and goal directed thought processes. *See id.* Dr. Oman concluded that Plaintiff had no limitations for following and understanding simple directions, or for performing simple tasks independently; mild limitations for maintaining attention and concentration, maintaining a regular schedule, and making appropriate decisions; mild to moderate limitations for learning new tasks and relating with others, and moderate limitations for performing complex tasks independently and appropriately dealing with stress. *See id.* at 36. The ALJ also took note of the state agency psychologist Dr. Tzetzo, who reviewed the record and determined that Plaintiff had no more than moderate difficulties in maintaining social functioning and concentration, persistence, or pace; along with mild restrictions of activities of daily living and no repeated episodes of decompensation of extended duration.

Relying on these findings, the ALJ noted that Plaintiff's mental impairments did not cause the extreme limitation of one, or marked limitation of two, of the paragraph B criteria. Plaintiff contends that the PTSD Questionnaire detailed above found marked limitations in several of the paragraph B criteria and contained an assessment that Plaintiff was "totally disabled" and "would preclude any capacity on his part whatsoever from maintaining . . . stability [in] any type of work

setting." *See* Dkt. No. 7 at 19. The Court need not address the weight this record should have been given, because, as was previously discussed, the PTSD Questionnaire did not relate back to the period on or before the ALJ's June 19, 2017, decision, and therefore, is not relevant in determining if the ALJ's decision was supported by substantial evidence.

Even if the Court considers the findings in the PTSD Questionnaire, Plaintiff is still not entitled to relief. Although Dr. Thompson found that the severity of Plaintiff's PTSD would impair or preclude him from focusing on and carrying out simple work-related activities, this finding was based solely on Plaintiff's subjective complaints and not objective clinical findings. The PTSD Questionnaire did not request, nor did Dr. Thompson provide, any mental status examination or other objective medical observations that would have supported the conclusion that Plaintiff's PTSD was of listing-level severity. *See* Tr. at 2836; *see also Polynice v. Colvin*, 576 Fed. Appx. 28, 31 (2d Cir. 2014) (holding that a claimant's self reports, even though recorded by a doctor, are not medical opinions entitled to deference). Even assuming Dr. Thompson had included such findings, they would have been inconsistent with the repeated unremarkable findings on mental status examination repeatedly observed during the period at issue by VA providers, as noted above. *See* 20 C.F.R. § 404.1527(c)(4). Finally, Dr. Thompson evaluated Plaintiff on August 4, 2017, in an independent medical consultant capacity, and not as a treating source whose opinion is entitled to more deference under the Commissioner's regulations. *See* 20 C.F.R. § 404.1527(a), (c)(2).

The Court finds that the ALJ's determination that Plaintiff failed to meet the criteria under paragraph B is supported by substantial evidence. In his decision, the ALJ cited to the records of multiple medical professionals who examined Plaintiff, including state agency medical consultants, whose opinions constitute expert opinion evidence which can be relied upon where

supported by medical evidence in the record and not inconsistent with other substantial evidence, as is the case here. *See* 20 C.F.R. § 404.1513a(b)(1); SSR 96-6p; *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). Accordingly, the Court denies Plaintiff's motion for judgment on the pleadings on this ground.

## D. Severity of Migraines

In his motion, Plaintiff contends that the Commissioner failed to properly assess the severity of his migraine headaches. *See* Dkt. No. 7 at 20-22. Plaintiff notes that the ALJ relies on a statement made during an early assessment in June 2016 by an Army medical evaluation board to support his conclusion that the migraine headaches were not severe but "then completely disregards all evidence of migraine headaches assessed, evaluated and treated by Neurologist Dr. Leon Zacharowicz with the Traumatic Brain Injury Clinic and Behavioral Health at Fort Drum which come after." *Id.* at 20 (citing Tr. at 34, 1389-1411, 1428-1733, 2364-2670). Further, Plaintiff claims that, "[n]ot only did the TBI Clinic note Plaintiff's migraine and headache history, but also connected his symptoms of severe pain, dizziness, memory loss, abnormal neuro examination, unsteady gait, sensitivity to light and noise to his brain injuries during combat in 2007." *Id.* at 21 (citing Tr. at 1389-1411, 1458-1733, 2664-2670).

The second step of the analysis is to determine whether the plaintiff proved that he had a severe impairment or combination of impairments that "significantly limit[ed his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "Basic work activities" include the following:

> walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision,

co-workers and usual work situations ... [d]ealing with changes in a
routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).  The omission of an impairment at step two may be deemed

harmless error, particularly where the disability analysis continues and the ALJ later considers the

impairment in her RFC determination.  *See Boisey v. Commissioner*, No. 5:14-cv-346, 2015 WL

4997199, *4 (N.D.N.Y. Aug. 20, 2015) (citing *Tryon v. Astrue*, No. 5:10–CV–537, 2012 WL

398952, *4 (N.D.N.Y. Feb. 7, 2012); *Plante v. Astrue*, No. 2:11–CV–77, 2011 WL 6180049, *4

(D. Vt. Dec. 13, 2011)).

As Plaintiff points out, the ALJ specifically relied on a June 7, 2016 medical evaluation

report by VA provider Dr. Sarkis Anac to reach the conclusion that Plaintiff's migraine headaches

were not severe.  *See* Tr. at 34, 2818-24.  Dr. Anac reviewed VA treatment records, noting

Plaintiff's complaints of headaches since 2008, which had "not changed significantly since onset,"

and for which Plaintiff had "no formal evaluation or treatment."  *See id.* at 2818, 2822.  The ALJ

specifically incorporated Dr. Anac's finding that there was "'no evidence of army functional

limitation, of frequent, incapacitating attacks in the form of unscheduled visits, time lost from

work, or early release from work due to headaches; and no evidence of failing treatment or that

the neurologist feels the [plaintiff] is unlikely to respond to available treatments.'"  *Id.* at 34

(quoting Tr. at 2822).  In formulating his report, Dr. Anac reviewed a June 2, 2016 evaluation by

physician assistant Rachel Meirose.  *See id.* at 362-64.  Ms. Meirose indicated that, aside from a

diagnosis of migraine headaches and Plaintiff's alleged symptomology, there were no other

"pertinent physical findings, complications, conditions, signs or symptoms" related to Plaintiff's

migraines and specifically found that Plaintiff's headache condition did not impact his ability to

work.  *See id.*  This evidence fully supports the ALJ's finding that Plaintiff's migraine headaches

did not result in significant limitations in his ability to perform basic work activities.  *See* 20

C.F.R. § 404.1521; SSR 85-28.

Plaintiff faults the ALJ for allegedly disregarding subsequent treatment evidence following Dr. Anac's June 2016 report, particularly from treating Fort Drum neurologist Dr. Leon Zacharowicz and Fort Drum's Behavioral Health and TBI clinics.  *See* Dkt. No. 7 at 20-21. Contrary to Plaintiff's contentions, the ALJ did consider this evidence and it does not support Plaintiff's position.

In June 2016, VA primary care physician Dr. Thaddeus Matthew Pajak referred Plaintiff to Dr. Zacharowicz based on a provisional diagnosis of headaches.  *See* Tr. at 1389, 1854.  On August 1, 2016, Dr. Zacharowicz initially evaluated Plaintiff, who complained of approximately one "moderate" residual headache from his TBI per week, with two-to-three "severe" headaches per month.  *See id.* at 1389-1411.  Aside from noting Plaintiff's symptomology similar to that reported by Dr. Anac and Ms. Meirose, Dr. Zacharowicz specified that there were "no other neurological symptoms or signs which precede, accompany or follow these headaches, and no focal or lateralized features."  *Id.* at 1391.  Dr. Zacharowicz recommended conservative treatment that included zolmitriptan (Zomig) as a "rescue" medication, and other measures such as taking riboflavin or coenzyme Q-10, massages, applying cold compresses, and relaxation.  *See id.* at 1401, 1406.  Dr. Zacharowicz referred Plaintiff for an MRI and further advised Plaintiff to maintain and bring in for the next visit a headache diary.  *See id.* at 1400.  Dr. Zacharowicz concluded the evaluation by releasing Plaintiff "w/o limitations."  *Id.* at 1406.

Plaintiff attended a group session on August 9, 2016, during which Dr. Zacharowicz noted that there was no change regarding Plaintiff's symptomatology, and that he was experiencing headaches three-to-four days per week.  *See* Tr. at 1748.  At this point, Plaintiff had not tried riboflavin or any other recommended supplement, and had not kept a headache diary as

instructed. *See id.* Dr. Zacharowicz started Plaintiff on a trial of topiramate (Topamax), and held off on zolmitriptan. *See id.* Again, Plaintiff was released without any limitations. *See id.* at 1854.

At a September 8, 2016 follow-up visit, Dr. Zacharowicz reported that there had been no change in Plaintiff's headaches, which he still experienced three-to-four times per week. *See id.* at 1782-88, 1999-2009. Plaintiff had still not tried riboflavin or any of the other recommended supplements, and he still did not maintain a headache diary. *See id.* at 1782, 1788. Moreover, Dr. Zacharowicz noted that the brain MRI yielded normal results and diagnosed "seemingly intractable headaches." *Id.* at 1782, 1805. Dr. Zacharowicz again noted the lack of neurological symptoms or signs that precede, accompany, or follow Plaintiff's headaches, and the lack of focal lateralized features. *See id.* at 1782. Aside from an impaired gait, Plaintiff's physical and neurological examination findings were normal or unremarkable. *See id.* at 1785-86. Dr. Zacharowicz once more prescribed a trial of topiramate and riboflavin and stressed that Plaintiff should keep a headache diary, which he was to bring to his next appointment. *See id.* at 1780, 1786, 1788.

During an October 28, 2016 follow-up examination, Dr. Zacharowicz noted again that there was no change in the frequency or severity of Plaintiff's headaches and that Plaintiff had still not tried riboflavin or the other supplements or keep a headache diary. *See id.* at 2716. Plaintiff claimed to not experience any benefits or side effects from topiramate and the physical examination findings were unchanged. *See id.* at 2716, 2723-24, 2756. Dr. Zacharowicz once again encouraged Plaintiff to keep a dream diary and Plaintiff was again released without limitations. *See id.* at 2732.

Treatment notes subsequent to Dr. Anac's June 2016 report from Fort Drum, particularly

its behavioral health clinic, continue to document Plaintiff's treatment for headaches as a residual problem attributable to his TBI. *See* Tr. at 1428, 1430-31, 1435, 1439, 1442, 1445, 1448, 1451, 1454, 1457, 1461, 1465, 1622, 1667. Moreover, during a number of Plaintiff's visits, Plaintiff did not complain of headaches and they were not listed as a problem. *See id.* at 1471-74, 1490-91, 1520, 1548, 1550-51, 1558-60, 1585, 1591-92, 1604, 1608, 1612, 1616, 1648, 1662, 1683-84, 1691, 1694, 1697-99, 1709-11, 1859, 1934, 1941, 2710, 2800. Further, contrary to Plaintiff's contention, there was no evidence reflecting any residual functional limitations resulting directly from Plaintiff's headaches. Rather, the treatment notes from both prior to and after Dr. Anac's June 7, 2016 report, while documenting treatment for adjustment disorder with or without mood or anxiety, PTSD, history of TBI, sleep apnea, and/or attention and concentration deficits, repeatedly showed mostly unremarkable clinical findings, and VA medical providers repeatedly releasing Plaintiff without any limitations.

Further, Plaintiff's own statements to medical sources reveal that despite the alleged frequency of his headaches, as well as his other conditions, he was still able to carry out and complete his assigned work duties; he simply did not feel as motivated to perform them as he had in the past. *See* Tr. at 1648, 1697, 1709, 1956. Finally, as the Commissioner notes, even Dr. Thompson in the August 2017 PTSD Questionnaire found that Plaintiff was "service-connected rated at 0%" for migraine headaches, signifying that Plaintiff's headache condition was not of the severity to entitle him to benefits under the VA's disability program. *Id.* at 2832; *see also* "What is a Service Connected Disability?" at https://themilitarywallet.com/va-disability-pay-rates-rise/ (last visited Jan. 7, 2019).

Based on the foregoing, the Court finds that the ALJ correctly determined that Plaintiff's

headaches were not a severe impairment.[3]

## E. RFC and Credibility Assessment

Plaintiff contends that the ALJ failed to make a finding as to his credibility or the weight given to his statements regarding his limitations, pain, and other symptoms. *See* Dkt. No. 7 at 23. Defendant argues that the ALJ summarily rejected his subjective complaints, citing to only the non-treating consultative examining physicians, a statement from the non-examining, non-treating State Agency psychiatrist, and only a small portion of the records from Plaintiff's treating physicians. *See id.* Plaintiff asserts that the ALJ "completely disregarded all records from the TBI Clinic and Dr. Leon Zacharowicz." *Id.* (citing Tr. at 1389-1411, 2364-2670, 2679-2799). Moreover, Plaintiff contends that the ALJ "disregarded Plaintiff's strong work history and commitment to the U.S. Army as a soldier for 10 years. He also disregarded that he suffered from these conditions with a gradual increase in pain and limitations in the years following his brain injury and onset of PTSD." *Id.*

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).

---

[3] Even assuming that the ALJ erred in this determination, which he did not, the error would be harmless because the ALJ continued with the sequential analysis and considered the effects of all of Plaintiff's severe and non-severe impairments past step two. *See Stanton v. Astrue*, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010) (holding that, even if the ALJ erred at step two in finding one of the plaintiff's impairments non-severe, the error would not warrant remand because the ALJ identified other severe impairments, proceeded through the sequential evaluation process, and considered the "combination of impairments" and the combined effects of all symptoms in making his determination); *Matta v. Colvin*, No. 13CIV5290, 2016 WL 524652, *12 (S.D.N.Y. Feb. 8, 2016) (holding that "'the omission of one or more severe impairments at step two may only be deemed harmless where the ALJ also later considers the effects from the omitted impairment as part of the ultimate RFC determination'") (quoting *Melendez v. Colvin*, No, 1:13-CV-1068, 2015 WL 5512809, *5 (N.D.N.Y. Sept. 16, 2015)).

An RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *See id.*; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*, daily activities, observations)" to support each conclusion. Social Security Ruling ("S.S.R.") 96–8p, 1996 WL 374184, at *7; *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Additionally,

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

S.S.R. 96–8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004). An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for a remand. *See Compo v. Commissioner of Social Sec.*, No. 6:05–CV–973, 2009 WL 2226496, *9 (N.D.N.Y. July 23, 2009) (citation omitted); *see also Hodge v. Astrue*, No. 07–CV–0162, 2009 WL 1940051, *10 (N.D.N.Y. July 7, 2009) (citation omitted).

To properly ascertain a claimant's RFC, an ALJ must therefore assess the claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull. *See* 20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a. Nonexertional limitations or impairments, including impairments resulting in postural and manipulative limitations, must also be considered. *See* 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P,

App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the corresponding regulations. *See Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

"While the ALJ is required to take into account a claimant's reports of pain, symptoms, and other indicia of impairment, she is not required to accept those reports 'without question.'" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); 20 C.F.R. § 416 .929(a). Instead, she "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49 (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The ALJ's credibility findings receive "special deference" because of her ability to observe the claimant's testimony. *See Yellow Freight Sys., Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994). Like other findings of the ALJ, the credibility finding is reviewed for whether it is supported by substantial evidence. *See Hopkins v. Colvin*, No. 13–cv–4803, 2014 WL 4392209, *5 (S.D.N.Y. Sept. 5, 2014); *Torres v. Colvin*, No. 12–cv–6527, 2014 WL 241061, *12 (S.D.N.Y. Jan. 22, 2014).

In the present matter, the record reflects that the ALJ properly exercised his discretion in resolving the evidentiary conflicts in the record to assess an FRC for a range of unskilled sedentary work that is supported by substantial evidence. *See* Tr. at 36-39. In making his RFC determination, the ALJ gave great weight to the assessments of consultative psychologist Dr. Oman, State Agency psychiatrist Dr. Tzetzo, and readjustment counselor Jennifer Christie. *See*

*id.* at 35-36, 38-39 (citing Tr. at 79, 1422-27, 2802-04).  Dr. Oman's largely unremarkable observations upon mental status examination, including intact attention and concentration, only mildly impaired memory, and average intellectual functioning, supported the opinion that Plaintiff had only mild limitations regarding simple tasks and maintaining attention and concentration, a regular schedule, and making appropriate decisions, and no more than moderate limitations for performing complex tasks and learning new tasks, relating adequately with others, and appropriately dealing with stress.  *See id.* at 35-36, 38, 1424-26.

Further, Dr. Tzetzo determined that Plaintiff was able to perform simple work tasks involving one and two-step directions, with a somewhat reduced ability to handle brief and superficial contact with others, and a reduced ability to tolerate and respond appropriately to supervision although adequate to handle ordinary levels of supervision in a customary work setting.  *See* Tr. at 79.  Dr. Tzetzo's assessment was based on Dr. Oman's findings and conclusion, along with available treatment records and Plaintiff's activities of daily living.  *See id.* at 74-79.

Further, on April 11, 2017, Jennifer Christie noted that Plaintiff's PTSD resulted in cognitive limitations that affected his memory and modes of learning.  *See id.* at 2802-04.  Despite this, Ms. Christie found that Plaintiff had only mild limitations in understanding and remembering simple instructions, and carrying out simple instructions, and in making judgments on simple work-related decisions.  *See id.* at 2802.  Additionally, Ms. Christie determinated that Plaintiff had moderate limitations in understanding and remembering complex instructions, in carrying out complex instructions, and in making judgments on complex work-related decisions.  *See id.*  As Defendant notes, Ms. Christie's assessed limitations are supported by and consistent with those of Drs. Oman and Tzetzo and the treatment record as a whole.  *See* 20 C.F.R. §§ 404.1513(d), 404.1527(c)(3)-(4); SSR 06-03p.

As demonstrated in the ALJ's decision, the opinion evidence was well-supported by and consistent with the record as a whole, particularly VA treatment records that consistently noted that Plaintiff was released without limitations. The opinions supported an RFC for a range of unskilled sedentary work, at which Plaintiff was able to understand and follow simple instructions and directions; maintain attention and concentration to perform simple tasks both independently and with supervision; regularly attend to a routine and maintain a schedule; relate to and interact with others to the extent necessary to carry out simple tasks; and handle reasonable levels of work-related stress in that he could make decisions directly related to the performance of simple work, as well as handle usual work place changes and interactions associated with simple work. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole").

Finally, contrary to Plaintiff's contentions, the ALJ sufficiently considered Plaintiff's subjective symptomatology and his work history in making his credibility determination. At step four of the sequential evaluation, the ALJ considered and cited to the exhibits documenting Plaintiff's past relevant work as a woodworker/machinist, U.S. Army Infantryman, and helicopter mechanic. *See* Tr. at 39 (citing Tr. at 184-87, 195-99, 208-13, 222, 229-32). Further, Plaintiff's work history is just "one of the many factors" that an ALJ is directed to consider regarding subjective symptomatology. *See Schaal v. Apfel*, 134 F.3d 496, 502-03 (2d Cir. 1998). That the ALJ did not specifically reference Plaintiff's good work history warrants no different outcome, given the overwhelming evidence supporting the ALJ's evaluation of Plaintiff's subjective complaints and overall RFC conclusion, including properly weighed medical source opinion

evidence, comprehensive VA treatment records consistently showing unremarkable clinical findings and no limitations, as well as Plaintiff's many and varied activities of daily living, as previously discussed. *See Stanton v. Astrue*, 370 Fed. Appx. 231, 234 (2d Cir. 2010).

Based on the foregoing, the Court finds that the ALJ correctly weighed Plaintiff's credibility and subjective complaints and the RFC determination was supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties submissions and the applicable law, and for the reasons stated above, the Court hereby

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: January 24, 2019
      Albany, New York

Mae A. D'Agostino
U.S. District Judge